IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| LORETTA K. ZIGLAR, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO. 2:18-cv-567-GMB |
| | ) | |
| | ) | |
| NANCY A. BERRYHILL, Acting | ) | |
| Commissioner, Social Security | ) | |
| Administration | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

On September 18, 2014, Plaintiff Loretta K. Ziglar applied for disability insurance benefits under Title II of the Social Security Act and supplemental security income under Title XVI of the Social Security Act, alleging in both claims a disability onset date of August 31, 2009. Ziglar's application for benefits was denied at the initial administrative level. She then requested a hearing before an Administrative Law Judge ("ALJ"). The ALJ held a hearing on June 20, 2017. She denied Ziglar's claims on June 28, 2017. Ziglar requested a review of the ALJ's decision by the Appeals Council, which declined review on April 17, 2018. As a result, the ALJ's decision became the final decision of the Commissioner of the Social Security Administration (the "Commissioner") as of April 17, 2018.

Ziglar's case is now before the court for review pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). Under 28 U.S.C. § 636(c)(1) and Rule 73 of the Federal Rules of Civil Procedure, the parties have consented to the full jurisdiction of the undersigned United

States Magistrate Judge. Based on its careful review of the parties' submissions, the relevant law, and the record as a whole, the court concludes that the decision of the Commissioner is due to be AFFIRMED.

## I. STANDARD OF REVIEW

The court reviews a Social Security appeal to determine whether the Commissioner's decision "is supported by substantial evidence and based upon proper legal standards." *Lewis v. Callahan*, 125 F.3d 1436, 1439 (11th Cir. 1997). The court will reverse the Commissioner's decision if it is convinced that the decision was not supported by substantial evidence or that the proper legal standards were not applied. *Carnes v. Sullivan*, 936 F.2d 1215, 1218 (11th Cir. 1991). The court "may not decide the facts anew, reweigh the evidence, or substitute its judgment for that of the Commissioner," but rather "must defer to the Commissioner's decision if it is supported by substantial evidence." *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1997) (citation and internal quotation marks omitted). "Even if the evidence preponderates against the Secretary's factual findings, [the court] must affirm if the decision reached is supported by substantial evidence." *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). Moreover, reversal is not warranted even if the court itself would have reached a result contrary to that of the factfinder. *See Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991).

The substantial evidence standard is met "if a reasonable person would accept the evidence in the record as adequate to support the challenged conclusion." *Holladay v. Bowen*, 848 F.2d 1206, 1208 (11th Cir. 1988) (quoting *Boyd v. Heckler*, 704 F.2d 1207, 1209 (11th Cir. 1983)). The requisite evidentiary showing has been described as "more than a scintilla, but less than a preponderance." *Bloodsworth v. Heckler*, 703 F.2d 1233,

1239 (11th Cir. 1983). The court must scrutinize the entire record to determine the reasonableness of the decision reached and cannot "act as [an] automaton[] in reviewing the [Commissioner's] decision." *Hale v. Bowen*, 831 F.2d 1007, 1010 (11th Cir. 1987). Thus, the court must consider evidence both favorable and unfavorable to the Commissioner's decision. *Swindle v. Sullivan*, 914 F.2d 222, 225 (11th Cir. 1990).

The court will reverse the Commissioner's decision on plenary review if the decision applies incorrect law or fails to provide the court with sufficient reasoning to determine that the Commissioner properly applied the law. *Id.* (citing *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994)). There is no presumption that the Commissioner's conclusions of law are valid. *Id.*

## II. STATUTORY AND REGULATORY FRAMEWORK

To qualify for disability benefits, a claimant must show the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A) & 416(i). A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrated by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3). Ziglar bears the burden of proving that she is disabled, and is responsible for producing evidence sufficient to support her claim. *See Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003).

A determination of disability under the Social Security Act requires a five-step analysis. 20 C.F.R. § 404.1520(a). The Commissioner must determine in sequence:

(1) Is the claimant presently unable to engage in substantial gainful activity?
(2) Are the claimant's impairments severe?
(3) Do the claimant's impairments satisfy or medically equal one of the specific impairments set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1?
(4) Is the claimant unable to perform her former occupation?
(5) Is the claimant unable to perform other work given her residual functional capacity, age, education, and work experience?

*See Frame v. Comm'r, Soc. Sec. Admin.*, 596 F. App'x 908, 910 (11th Cir. 2015). "An affirmative answer to any of the above questions leads either to the next question, or, [at] steps three and five, to a finding of disability. A negative answer to any question, other than at step three, leads to a determination of 'not disabled.'" *McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986) (quoting 20 C.F.R. § 416.920(a)−(f)). "Once the finding is made that a claimant cannot return to prior work the burden of proof shifts to the Secretary to show other work the claimant can do." *Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995) (citing *Gibson v. Heckler*, 762 F.2d 1516 (11th Cir. 1985)).

## III. FACTUAL BACKGROUND AND ADMINISTRATIVE PROCEEDINGS

Loretta Ziglar was 43 years old at the time of the ALJ's decision. R. 39. She lives in a house with her husband and son in Red Level, Alabama. R. 39–40. Ziglar has an eighth-grade education. R. 39. Her primary complaints are high blood pressure, diabetes, fibromyalgia, arthritis, bipolar disorder, depression, obesity, neuropathy, angina, bleeding ulcers, and Helicobacter Pylori. R. 226. In the past, Ziglar worked as a taxicab dispatcher, a laborer in a store, a sewing machine operator, and a nurse assistant. R. 58–59. She has not engaged in substantial gainful activity since August 31, 2009. R. 19. The ALJ determined that she met the disability insured status requirements from August 31, 2009 through September 30, 2013. R. 17.

To assist in her determination, the ALJ referred Ziglar to two Disability Determination Services doctors for a disability medical examination. Dr. Caleb Yongkuma, an internal medicine and infectious disease doctor, completed consultative examinations of Ziglar on November 26, 2014 and November 15, 2016. R. 800 & 1045. Dr. Fernelle Warren, a clinical psychologist, completed consultative mental examinations of Ziglar on October 10, 2014 and November 7, 2016. R. 795 & 1055. Both doctors completed Medical Source Statements.

Following an administrative hearing, the ALJ found that Ziglar suffers from the following severe impairments under 20 C.F.R. § 416.920(c): depression, anxiety, fibromyalgia, obesity, type 2 diabetes mellitus, hypertension, and arthritis. R. 20. But the ALJ concluded at step three of the analysis that none of Ziglar's impairments, nor a combination of her impairments, met or medically equaled the severity of one of those listed in the applicable regulations. R. 20. At steps four and five, the ALJ further found that Ziglar has the residual functional capacity ("RFC") to perform a limited range of sedentary work.[1] R. 23. The ALJ concluded that Ziglar could perform sedentary work limited to simple, routine, repetitive tasks involving few workplace changes that were introduced gradually. R. 23.

Ultimately, the ALJ determined that Ziglar is unable to perform any past relevant work. R. 27. But considering Ziglar's age, education, work experience, and RFC, she

---

[1] "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. § 404.1567(a).

found that there are jobs that Ziglar can perform that exist in significant numbers in the national economy. R. 28. Specifically, based on the testimony of a vocational expert, the ALJ found that Ziglar could be a document preparer, an egg processor, and an addresser. R. 61–62. Therefore, the ALJ concluded that Ziglar is not disabled within the meaning of the Social Security Act. R. 29. Based on these findings, the ALJ denied Ziglar's claims. R. 19.

## IV. DISCUSSION

Ziglar presents three issues on appeal: (1) whether the ALJ erred by failing to call a Medical Expert to assist in determining the disability onset date; (2) whether the ALJ's RFC finding is based on substantial evidence; and (3) whether the ALJ erred by failing to assess all of Ziglar's mental limitations when determining her RFC. Doc. 14 at 2.

### A.    The ALJ's Failure to Call a Medical Expert

Though Social Security Rulings are binding only on the Social Security Administration, and not the court, the Eleventh Circuit accords the rulings great respect and deference if the underlying statute is unclear and the legislative history offers no guidance. *Bailey v. Colvin*, 224 F. Supp. 3d 1249, 1256 (N.D. Ala. 2016) (citing *B. ex rel. B. v. Schweiker*, 643 F.2d 1069, 1071 (5th Cir. 1981)). Social Security Ruling 83-20 describes the procedure by the which the Commissioner should determine the onset date of disability. *Caces v. Comm'r, Soc. Sec. Admin.*, 560 F. App'x 936, 938 (11th Cir. 2014). The onset date of disability is the first day an individual is disabled as defined under the Social Security Act and regulations. *See Klawinski v. Comm'r of Soc. Sec.*, 391 F. App'x 772, 776 (11th Cir. 2010). "There are two situations where the ruling suggests the need for the ALJ to call a medical advisor during a hearing: (1) where it may be possible, based

6

on medical evidence, to reasonably infer that the onset of a disability impairment occurred some time prior to the date of the first recorded medical examination; and (2) in terms of malignant neoplastic disease, to establish onset of disability prior to the time a malignancy is first demonstrated to be inoperable or beyond control by other modes of therapy." *Id*. "The plain language of SSR 83-20 indicates that it is applicable only after there has been a finding of disability and it is then necessary to determine when the disability began." *Caces*, 560 F. App'x at 939. In other words, the ALJ is required to call a medical expert only after the ALJ makes a finding of disability. *Klawinski*, 391 F. App'x at 776.

*Caces*, 560 F. App'x at 938, is instructive here. In that case, the claimant filed for disability benefits on August 3, 2007 and alleged a disability onset date of June 22, 2006. After holding a hearing and reviewing the entire record, the ALJ determined that the claimant was not disabled during the relevant time period. *Id.* The claimant appealed, arguing that the ALJ erred in failing to call a medical expert to testify about the onset date of disability. *Id.* The Eleventh Circuit held that there was no reason to call a medical expert to determine the disability onset date because the claimant was not disabled. *Id.* at 939 ("There was no need for assistance from a medical advisor to determine the date of onset because the unambiguous medical evidence shows Caces was not disabled before the date of last insured."). Accordingly, the court concluded that the ALJ did not err by failing to call a medical expert. *Id.*

Similarly, in *Klawinski*, 391 F. App'x at 776, the Eleventh Circuit determined that the ALJ was not required to call a medical expert to determine a disability onset date until a finding of disability. The claimant argued that ALJ erred by failing to call a medical expert at her hearing to assess the disability onset date, where the ALJ had to retroactively

determine whether she was disabled in the past and where the onset date was ambiguous. *Id.* But the court held that the ALJ was not required to call a medical expert because the ALJ found that the claimant was not disabled. *Id.* ("We conclude that the ALJ did not contravene SSR 83-20 because the ALJ ultimately found that Klawinski was not disabled, and SSR 83-20 only required the ALJ to obtain a medical expert in certain instances to determine a disability onset date after a finding of disability."). Accordingly, the court affirmed the decision denying the claimant benefits. *Id.* at 777.

And in *Morgan v. Soc. Sec. Admin., Comm'r*, 2019 WL 1466259, at *3 (N.D. Ala. Apr. 3, 2019), the Northern District of Alabama held that SSR 83-20 did not apply to the claimant's case because the ALJ determined that the claimant was not disabled. The *Morgan* claimant argued that the ALJ failed to comply with SSR 83-20 because he did not obtain expert testimony to determine her disability onset date. *Id.* at *2. But the ALJ found that the claimant was not disabled. *Id.* at *3. And, as the district court reiterated, the Eleventh Circuit has held that an ALJ is required to obtain a medical expert only after a finding of disability. *Id.* Accordingly, the district court concluded that SSR 83-20 did not apply, and that the ALJ did not err by failing to call a medical expert at the claimant's hearing. *Id.*

Likewise, here, the ALJ did not err by failing to call a medical expert at Ziglar's hearing because the ALJ ultimately concluded that Ziglar was not disabled. As in *Caces*, *Klawinski*, and *Morgan*, where none of the claimants were found to be disabled during the relevant time period, here, the ALJ determined that Ziglar was not disabled as defined by the Social Security Act and regulations. R. 29. Consequently, SSR 83-20 does not apply to Ziglar's case, *Morgan*, 2019 WL 1466259, at *3, because an ALJ is not required to

procure a medical expert until she makes a finding of disability. *Klawinski*, 391 F. App'x at 776. Here, the ALJ did not need to obtain a medical expert to determine Ziglar's disability onset date because she found that Ziglar was not disabled. Accordingly, the ALJ did not err.

## B.     The ALJ's Residual Functional Capacity Finding

"[T]he ALJ has the responsibility for determining a claimant's RFC." *Castle v. Colvin*, 557 F. App'x 849, 853–54 (11th Cir. 2014) (citing 20 C.F.R. § 404.1546(c)). To determine a claimant's RFC, the ALJ must follow a two-process. First, she must determine whether there is a physical or mental impairment that could produce the claimant's symptoms. R. 23. Then, the ALJ must evaluate the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which the symptoms limit the claimant's functional capacity. R. 23.

"To find that an ALJ's RFC determination is supported by substantial evidence, it must be shown that the ALJ has provided a sufficient rationale to link substantial record evidence to the conclusions reached." *Eaton v. Colvin*, 180 F. Supp. 3d 1037, 1055 (S.D. Ala. 2016) (citation and internal quotation marks omitted). There is no requirement that the RFC assessment "be supported by the assessment of an examining or treating physician." *Id.* at 1055–56. Nor is the ALJ required to "specifically refer to every piece of evidence, so long as the ALJ's decision is not a broad rejection, i.e., where the ALJ does not provide enough reasoning for a reviewing court to conclude that the ALJ considered the claimant's medical condition as a whole." *Packer v. Comm'r, Soc. Sec. Admin.*, 542 F. App'x 890, 891–92 (11th Cir. 2013). But the "ALJ is obligated to consider all relevant medical evidence and may not cherry-pick facts to support a finding of non-disability while

ignoring evidence that points to a disability finding." *Dicks v. Colvin*, 2016 WL 4927637, at *4 (M.D. Fla. Sept. 16, 2016). However, "[t]he question is not . . . whether the ALJ could have reasonably credited [claimant's] testimony, but whether the ALJ was clearly wrong to discredit it." *Werner v. Comm'r, Soc. Sec.*, 421 F. App'x 935, 939 (11th Cir. 2011)

### 1. Substantial Evidence

Here, there is substantial evidence to support the ALJ's finding that Ziglar has the residual functional capacity to perform a limited range of sedentary work. After considering the evidence, the ALJ found that Ziglar's medically determinable impairments could be expected to cause her alleged symptoms. R. 26. However, the ALJ determined that the intensity, persistence, and limiting effects of her symptoms were not enough to altogether prevent her from functioning in the workplace. R. 26.

### a. Physical Limitations

Considering Ziglar's alleged physical limitations, substantial evidence supports the ALJ's RFC finding. Ziglar asserts that she quit work in 2009 partly due to the fact that her employer went out of business, and partly because her father was ill and needed someone to take care of him. R. 52. Despite the fact that neither of these reasons are caused by a disability, Ziglar alleges that her disability onset date is August 31, 2009. While in her Function Report Ziglar indicates that she cannot stand for long periods of time, squat, or bend her knees (R. 245), she reports that she can cook breakfast for herself and for her mother. R. 244. She also can complete light housework before needing to lie down to rest. R. 244. Ziglar reports that she assists her mother with some of her mother's daily needs. R. 245. She can prepare very simple meals, such as frozen dinners or sandwiches, or cereal

and milk. R. 246.  She prepares these meals two times a day. R. 246.  She can shop for food and household items. R. 247.  She can drive a car. R. 247.  She can walk half of a mile before needing to rest. R. 249.  In January and February 2009, Ziglar's treating physician determined that she had a good range of motion in all of her joints, including her back. R. 323 & 326.  The straight-leg raise test performed at both of these visits was normal. R. 323 & 326.  In March 2013, Ziglar met with a doctor complaining of diabetes, hypertension, fibromyalgia, leg pain, headaches, dizziness, earaches, arthritis, burning while urinating, and nervousness. R. 551.  While finding that she had low back pain, the doctor determined that Ziglar's joint movement was normal. R. 552.  In April 2013, the same doctor determined that Ziglar still had normal joint movement and reported mostly normal findings. R. 555.  Again in July 2013, the doctor reported mostly normal findings along with no joint movement limitations. R. 561.

Treatment at the Dozier Family Heath Center revealed similar findings.  After finding some tenderness to the back in February 2012, the treating physician determined that Ziglar's back and musculoskeletal system were normal in March 2012. R. 807–10.  When Dr. Yongkuma completed his 2014 disability medical examination, he found that Ziglar appeared in no apparent distress and that her examination was "essentially normal except for a slight limp when she walks with her right hip." R. 801–02.  Yongkuma found that Ziglar's extremities and back had a normal range of movement and that her motor strength was normal. R. 802.  Apart from the slight limp, Yongkuma concluded that no abnormalities were present. R. 802.  When Yongkuma evaluated Ziglar in 2016, he again noted no abnormalities and concluded that she did not have any physical limitations.

R. 1046.  He ultimately determined that the examination was essentially unremarkable. R. 1046–47.

### b.    Mental Limitations

Considering Ziglar's mental limitations, substantial evidence supports the ALJ's RFC determination.  The ALJ found that despite Ziglar's mental impairments, she had the RFC to perform sedentary work consisting of simple, routine, and repetitive tasks involving few workplace changes and changes that were introduced gradually. R. 23.  When Dr. Warren evaluated Ziglar in 2014, she noted that Ziglar was cooperative, alert, and attentive. R. 796.  Ziglar's productivity and speech were normal and appropriate, and Ziglar spoke in expressive tones. R. 796.  She was understandable and coherent. R. 796.  Though Ziglar's concentration was mildly impaired for conversation purposes, her recent and remote memory appeared intact. R. 796.  Warren determined that Ziglar's ability to function independently was moderately impaired, and that her ability to act appropriately in the workplace and following instructions was moderately impaired. R. 797.  When Warren evaluated Ziglar again in 2016, she again reported that Ziglar was cooperative, alert, and attentive. R. 1056.  Warren determined that Ziglar's ability to act appropriately in the workplace and follow instructions was moderately to markedly impaired. R. 1057.  But she noted that the content of Ziglar's thinking appeared to be within normal limits. R. 1056.

After treating for some time with the South Central Alabama Mental Health Board, Ziglar's mental impairments seemed to improve.  Psychiatrists noted that Ziglar was fully alert and had a good attention span. R. 852–53.  Though initially presenting with suicidal thoughts in November 2014, by December 2014, after taking medication and receiving

mental health treatment, she no longer had suicidal tendencies. R. 834–48. The psychiatrist noted that Ziglar's impulse control was fair and that she had average judgment and insight. R. 848. In March 2015, after continuing treatment, Ziglar reported a decrease in anxiety, depression, and mood swings. R. 854. Ultimately, even considering Ziglar's physical and mental limitations, substantial evidence supports the ALJ's RFC finding.

## 2. *Dr. Yongkuma's Opinion*

Ziglar asserts that the ALJ erred in affording Dr. Yongkuma's opinion little weight. "In evaluating medical opinions, the ALJ considers many factors, including the examining relationship, the treatment relationship, whether the opinion is amply supported, whether the opinion is consistent with the record and the doctor's specialization." *Kelly v. Comm'r of Soc. Sec.*, 401 F. App'x 403, 407 (11th Cir. 2010) (citing 20 C.F.R. §§ 404.1527(d) & 416.927(d)). The opinions of examining physicians are given more weight than those of non-examining physicians, and the opinions of treating physicians are given substantial weight unless the ALJ shows good cause for not doing so. *See id.* "The opinions of non-examining, non-reviewing physicians, are entitled to little weight when contrary to those of an examining physician, and taken alone, they do not constitute substantial evidence." *Forrester v. Comm'r of Soc. Sec.*, 455 F. App'x 899, 901 (11th Cir. 2012). Doctors who examine a claimant on only one occasion are not considered treating physicians. *See Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1160 (11th Cir. 2004). In any event, "the ALJ must state with the particularity the weight given to different medical opinions and the reasons therefor." *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1179 (11th Cir. 2011). "In the absence of such a statement, it is impossible for a reviewing court to determine whether the ultimate decision on the merits of the claim is rational and supported

by substantial evidence." *Cowart v. Schweiker*, 662 F.2d 731, 735 (11th Cir. 1981). "Therefore, when the ALJ fails to 'state with at least some measure of clarity the grounds for his decision,' we will decline to affirm 'simply because some rationale might have supported the ALJ's conclusion.'" *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1179 (11th Cir. 2011) (quoting *Owens v. Heckler*, 748 F.2d 1511, 1516 (11th Cir. 1984)). But there is no requirement that the RFC assessment "be supported by the assessment of an examining or treating physician." *Eaton*, 180 F. Supp. 3d at 1055–56.

The ALJ gave little weight to the consultative opinions of Yongkuma because she found Yongkuma's report to be internally inconsistent. R. 26. The ALJ found it internally inconsistent that Yongkuma's physical examination revealed no physical limitations, yet Yongkuma completed a Medical Source Statement indicating that Ziglar had significant limitations when it came to sitting, standing, and walking. R. 26.

"The ALJ may reject the opinion of any physician when the evidence supports a contrary conclusion." *McCloud v. Barnhart*, 166 F. App'x 410, 418 (11th Cir. 2006) (internal citation omitted). Based on the evidence in the record, the court finds that the ALJ's decision to grant non-treating physician Yongkuma's opinion little weight is based on substantial evidence. As a non-treating physician who examined Ziglar only twice, his opinion is not entitled any special deference. *See Wilcox v. Comm'r, Soc. Sec.*, 442 F. App'x 438, 439 (noting that the "the opinions of examining or treating physicians are given more weight than non-examining or non-treating physicians"). And in considering Ziglar's daily activities, work history, social interactions, and mental health history, the ALJ considered the same factors routinely considered by the Eleventh Circuit in social security appeals. *See, e.g., Perkins*, 553 F. App'x at 873–874 (considering the claimant's past work,

daily activities, and medical history); *Milner*, 275 F. App'x at 948 (considering the claimant's daily activities, social functioning, and a mental illness controlled with medication); *Popp*, 779 F.2d at 1500 (declaring that the "ALJ is required to examine the results in conjunction with other medical evidence and the claimant's daily activities and behavior"). Furthermore, the ALJ provided a sufficient rational for affording Yongkuma's opinion little weight in articulating that Yongkuma's physical examination is inconsistent with his Medical Source Statement. Despite concluding that Ziglar's physical examination in 2014 was essentially normal (R. 802), that she had no physical limitations during her examination in 2016 (R. 1047), and that she had good range of movement, Yongkuma determined that Ziglar was limited in her abilities to sit, stand, and walk. R. 1049. The ALJ did not err by assigning little weight to Yonkguma's opinion, as she articulated a sufficient rational supported by substantial evidence for doing so.

### 3. *Dr. Warren's Opinion*

The ALJ also gave little weight to the consultative psychological evaluation by Dr. Warren, again finding that her evaluation was inconsistent with her Medical Source Statement. R. 26. Despite finding that Ziglar's mental health examinations were essentially normal, Warren indicated that Ziglar had moderate to marked mental limitations. R. 26. Because Warren is not a treating physician—she is a DDS doctor who examined Ziglar twice at the request of the ALJ—her opinion was not entitled to any substantial weight. *See Wilcox*, 442 F. App'x at 439. And the ALJ stated with particularity the weight she gave to Warren's opinion and the reasons therefor. R. 26. Moreover, the ALJ's rational is supported by substantial evidence. Despite making many normal and unremarkable findings in both 2014 and 2016, Warren determined that Zilgar's prognosis was poor and

that she possessed some marked limitations. R. 794–97 & 1055–61. Warren determined that Ziglar was oriented to person, place, time, and date, that her flow of speech was normal, that she spoke in expressive tones and was understandable and coherent, and that the content of her thinking appeared to be within normal limits. R. 796 & 1056. *See Lacina v. Comm'r, Soc. Sec.*, 606 F. App'x 520, 528 (finding of inconsistency of doctor's opinion was supported by the record where the doctor noted that the claimant was oriented to time, place, person, had a clear and coherent speech, had an animated affect, and fair insight and judgment).

Additionally, the ALJ's RFC finding takes into account Warren's conclusion that Ziglar would be moderately to markedly impaired in her interactions with supervisors and coworkers and when following instructions. R. 23 ("[Ziglar] would need few workplace changes that were introduced gradually. She can perform simple, routine, repetitive tasks."). The ALJ articulated a sufficient rationale supported by substantial evidence for giving Warren's opinion little weight. Accordingly, the ALJ did not err in determining Ziglar's residual functional capacity.

## C. The ALJ's Failure to Assess Ziglar's Mental Limitations

In her statement of issues, Ziglar asserts that the ALJ committed reversible error by not assessing all of her mental limitations when determining her RFC. Doc. 14 at 2. But Ziglar failed to brief this issue, and at any rate the ALJ did consider Ziglar's mental limitations. The ALJ noted that Ziglar had borderline intellectual functioning, depression, and anxiety. R. 19–20. The ALJ considered whether Ziglar's mental impairments met the Social Security listings. R. 22. In doing so, she analyzed Ziglar's ability to understand, remember, or apply information; her ability to interact with others; her ability to

concentrate, persist, or maintain pace; and her ability to adapt and manage herself. R. 22. The ALJ also reviewed Ziglar's medical records, including those from the consultative examination by Warren and her treatment at the South Central Alabama Mental Health Board.  She considered Ziglar's testimony at the hearing, her function report, and her Disability Determination Explanation. R. 22.  The ALJ asked the vocation expert to factor in Ziglar's mental limitations when determining whether there was a job she could perform. R. 61.  Furthermore, as discussed above, the ALJ's RFC finding is supported by substantial evidence.  The court finds that the ALJ adequately assessed all of Ziglar's mental limitations.

## V.  CONCLUSION

Based on the foregoing, the undersigned concludes that the Commissioner's decision is supported by substantial evidence and based upon the proper legal standards. Accordingly, the decision of the Commissioner is AFFIRMED.

A final judgment will be entered separately.

DONE this 4th day of June, 2019.

_____
GRAY M. BORDEN
UNITED STATES MAGISTRATE JUDGE